LAKE TANKERS CORPORATION, Owner Of The Motor Vessel Lake Charles, Libellant-Appellant-Cross-Appellee,

v.

THE Steamship INGWI, her engines, boilers, etc., and Rolf Wigand, Claimant-Appellee-Cross-Appellant.

Rolf WIGAND, as owner of The Steamship Ingwi, Cross-Libellant-Appellee-Cross-Appellant,

v.

THE Motor Vessel LAKE CHARLES and Lake Tankers Corporation, Cross-Respondent-Appellant-Cross-Appellee.

Nos. 347, 348, Dockets 24007, 24008.

United States Court of Appeals Second Circuit.

Argued April 12, 1956.

Decided Aug. 16, 1956.

Burlingham, Hupper & Kennedy, New York City (Stanley R. Wright and H. Barton Williams, New York City, of counsel), for appellant, Lake Tankers Corp.

Haight, Gardner, Poor & Havens, New York City (MacDonald Deming, Gordon W. Paulsen and Richard G. Ashworth,

**2**

New York City, of counsel), for appellee Rolf Wigand, as owner of S/S Ingwi.

Before CLARK, Chief Judge, and MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

Shortly after ten o'clock in the evening of June 26, 1952, the steamship Ingwi, 269.6 feet long and 37.1 abeam, struck the motor driven tanker Lake Charles, 213.7 feet in length and 37.1 abeam, on the port quarter some 25 feet from the stern. The collision occurred in mid-channel between the flashing red and green buoys at the point where the south reach of Newark Bay channel meets the Bergen Point west reach of Kill Van Kull, or about 600 yards north of the bell buoy at Bergen Point west.

To the north is the Jersey Central drawbridge which opened to let the tug Gwendoline Steers with three light sand scows in tow pass through, followed by the Lake Charles, bound from Newark, New Jersey, to Rensselaer, New York, with a cargo of fuel oil. At this time the Ingwi was approaching the bell buoy at Bergen Point West, to make the turn to a northerly course up the Newark Bay channel.

It was dark, the weather was clear, good visibility, negligible wind and flood tide. But the currents from east and west produced a swirl as they met and flooded into the Newark Bay channel in a northerly direction.

After passing through the draw the Lake Charles hauled to port to pass the tug and tows, so that, when the Lake Charles and the Ingwi sighted one another, the tug and her tows were hugging the westerly side of the channel, which was upwards of 500 feet wide, and the Lake Charles was on the easterly side. Both the Ingwi and the Lake Charles were proceeding at about 4 to 5 knots over the ground.

As each showed green to the other and there was some 200 to 300 feet between the Lake Charles on her right and the tug and tows on her left, the Ingwi blew two blasts for a starboard to starboard passing, to which the Lake Charles immediately responded with two blasts. The tug then invited a port to port passing which the Ingwi promptly accepted. Had this program been followed the collision would not have occurred.

One can only speculate as to what took place on the bridge of the Ingwi as she rounded the bell buoy at Bergen Point West. The probability is that she was momentarily caught in the swirl where the flood currents met. Perhaps she made the turn on a hard right rudder. In any event, she then gave a one-blast signal, and at the time of doing so, was still swinging to starboard, but with a hard left rudder.

To the bridge of the Lake Charles this swing to starboard of the Ingwi showed her green changing to red. The vessels were 600 to 800 feet apart. And the Lake Charles answered with one blast and changed her course to starboard, in order to negotiate what was now to be a port to port passing.

The explanation for the one-blast, which was proffered by the Ingwi, is that she intended no signal to the Lake Charles, but rather to the tug Fred B. Dalzell, then at the drawbridge some half mile to the north. The trial judge found neither that the tug was signalled to nor even sighted. As a matter of fact, a train was passing over the draw at the time and no signal could have been or was heard by the tug. A finding that the one-blast signal was intended for the tug Fred B. Dalzell would have been against all the probabilities and, as the trial judge did not give credence to the testimony on this subject by the Ingwi's pilot, clearly erroneous. It was inevitable that the Lake Charles should have understood, as she did, that the signal was intended for her, and that it meant that the Ingwi had changed her mind and was heading for a port to port passing rather than the starboard to starboard passing previously agreed upon at a time when the vessels showed green to green.

We have no doubt of the fault of the Ingwi, under these circumstances.

While the record is barren of any explanation of the continued swing of the Ingwi to starboard, the probability is that the effect of the swirl was to throw her momentarily to starboard and, had the rudder been changed to port or amidships she would have straightened out. However that may be, the Ingwi was clearly at fault in sounding the one-blast signal, and the trial judge so found.

But we cannot agree with his finding of fault on the part of the Lake Charles.

The course of events after the exchange of these one-blast signals was that the Ingwi came on at undiminished speed and sounded two blasts. The Lake Charles ordered full speed ahead, put her wheel hard right and tied down her whistle. Had the Ingwi reversed her engines, or taken the burden off her left wheel, there would have been no collision as they missed safety by a scant 25 feet. The hard left wheel of the Ingwi finally took hold and the bow of the Ingwi struck the Lake Charles as above stated.

The fault ascribed to the Lake Charles is that she should not have agreed to the port to port passing. The reason given is that this was unsafe in view of the proximity of the vessels, the narrowness of the channel and the presence of the Gwendoline Steers and her tow. But what was the Lake Charles to do? She could not respond to the one-blast signal with two blasts, as cross-signals are forbidden by the Pilot Rules (33 C.F.R. 80.-2), The Hygrade No. 12 v. The Talisman, 2 Cir., 153 F.2d 52. As the Ingwi was showing her red light, a sounding of the danger signal and reversing her engines by the Lake Charles would apparently make a collision inevitable. At least so it must have appeared to the Lake Charles. Surely the Lake Charles could not have known that the Ingwi's wheel was still hard left.

The critical question is not whether there was danger of collision, but whether at the time of the exchange of one-blast signals a port to port passing could have been negotiated. The court's finding on this subject disposes of the case. It is: "In addition there is a finding that prompt action by the Ingwi after the Lake Charles' single blast and alteration of course would have averted the collision."

 Such danger as existed was wholly caused by the conduct of the Ingwi. And the Lake Charles must be exonerated. Petterson Lighterage & T. Corp. v. New York Central R. Co., 2 Cir., 126 F.2d 992.

Reversed as to the Lake Charles.